**BILLY J. WILLIAMS, OSB #901366**
United States Attorney
District of Oregon
**ALEXIS A. LIEN, OSB #110569**
alexis.lien@usdoj.gov
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone: (503) 727-1000
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$14,860.00 IN UNITED STATES CURRENCY, *in rem*,<br><br>Defendant. | 3:19-cv-00300-MA<br><br>COMPLAINT, *in rem*,<br>FOR FORFEITURE |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Alexis A. Lien, Assistant United States Attorney, for its Complaint *in rem* for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendant, *in rem*, $14,860.00 in United States currency, was seized in the District of Oregon, and is now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendant, *in rem*, $14,860.00 in United States currency, represents proceeds traceable to an exchange for controlled substances or was used or intended to be used to facilitate such a transaction in violation of 21 U.S.C. § 801, *et. seq.*, and is forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6), as more particularly set forth in the Declaration of Special Agent Bradley A. Dixon, Drug Enforcement Administration, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, Plaintiff, United States of America, prays that due process issue to enforce the forfeiture of Defendant, *in rem*, $14,860.00 in United States currency, that due notice be given to all interested persons to appear and show cause why forfeiture of this Defendant, *in rem*, should not be decreed; that due proceedings be had thereon; that this Defendant be forfeited to the United States; that the Plaintiff United States of America be awarded its costs and disbursements incurred in this action.

DATED: **March 1, 2019**.                    Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Alexis A. Lien*
**ALEXIS A. LIEN**

## VERIFICATION

I, BRADLEY A. DIXON, declare, under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Drug Enforcement Administration, and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

*s/ Bradley A. Dixon*
BRADLEY A. DIXON
Special Agent
Drug Enforcement Administration

## DECLARATION OF BRADLEY A. DIXON

I, Bradley A. Dixon, do hereby declare:

## PURPOSE OF THIS DECLARATION

1. This declaration is submitted in support of a complaint for forfeiture. The information contained in this declaration is based on an investigation conducted by the Drug Enforcement Administration (hereinafter "DEA") and the Portland Regional Drug and Organized Crime Task Force (hereinafter "PDX-TF") (hereinafter collectively "Investigators"), which will show that $14,860 in U.S. currency seized from Isaiah Lancaster at the Portland International Airport is subject to forfeiture pursuant to 21 U.S.C § 881(a)(6), as moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate violations of 21 U.S.C. § 801, *et. seq*. Information contained in this declaration is based upon my personal observations, training, and experience, and that of other law enforcement officers. This declaration does not contain each and every fact that I know about this investigation, only those necessary to establish probable cause to believe the seized currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## AGENT BACKGROUND AND TRAINING

2. I have been employed as a Special Agent by the DEA since February 2017. My current assignment is at the Portland District Office where I am assigned to a DEA Federal Task Force Group. My formal law enforcement training includes successfully completing the 18-week DEA basic training course at the DEA academy in Quantico, Virginia. Since then, I have participated in dozens of drug investigations involving controlled purchase operations, vehicle tracking, cell phone geo-location techniques, cell-site simulators, pen register/trap and trace orders, and airport interdiction of drugs and drug proceeds. I have interviewed and operated informants,

**Declaration of Bradley A. Dixon**                                                       EXHIBIT A   PAGE 1

executed search warrants, arrested and interviewed subjects, conducted physical surveillance, and utilized electronic and video surveillance.  I have also worked with and consulted numerous agents and law enforcement officers who have investigated drug trafficking.  I have received additional formal training through the El Paso Intelligence Center's Jetway Interdiction Training program, which focuses on drug and bulk cash smuggling occurring within mass transportation systems.

## BACKGROUND ON NARCOTICS PROCEEDS TRANSPORTED THROUGH AIRPORTS

3.  I know from my training and experience that drug traffickers transporting narcotics proceeds will frequently use airports to transport drug proceeds to a source city in order to purchase controlled substances, including marijuana.  I know from my training and experience that subjects trafficking drug proceeds often use airports to transport proceeds because of the speed of travel, the ability to maintain custody of the proceeds, and the low detection rate by law enforcement. I know from training and discussions with other law enforcement officers that these controlled substances and proceeds of the illegal sale of controlled substances are often found during airport interdictions.

4.  Based on my experience, training, and discussions with other law enforcement officers experienced in drug investigations, I know Oregon is a source state for marijuana that is transported outside of Oregon to destination locations across the United States.  Current Oregon state laws permitting the recreational and medical growth, purchase, and possession of marijuana provide individuals with significant quantities of marijuana, which can be illegally shipped to other states where marijuana is illegal and less available in order to derive substantially increased profits.

5.  Based on my experience, training and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators exist when drug

traffickers book airline travel for the purpose of purchasing controlled substances. These travel indicators are inconsistent with normal travel and would only be justified under extraordinary circumstances.

6.     I know from my training and experience that drug traffickers will book their airline travel the same day or several days before their travel. This is often done because the availability of narcotics and narcotics proceeds changes on short notice.  Drug traffickers have narrow windows to conduct drug transactions when a source of supply obtains narcotics. Otherwise the source will find another buyer.

7.     I know from my training and experience that drug traffickers will book one-way travel or have short turn around flights. This is commonly done because drug traffickers are delivering narcotics proceeds to their source of supply (and do not require a lot of time at their destination) or the drug trafficker is planning on transporting the purchased narcotics by car/train back to their originating city.

8.     I know from my training and experience that drug traffickers will transport their narcotics proceeds in carry-on or checked bags or concealed within natural voids inside checked luggage. Drug traffickers know that law enforcement passenger and luggage screening is most thoroughly done when passengers are entering the airport terminal and that there is less stringent screening of checked luggage. Therefore, in my experience, the larger seizures of narcotics proceeds found in airports are typically concealed within checked baggage. Drug traffickers believe that their greatest threat for detection of narcotics proceeds within checked bags is from x-ray screening. For that reason, drug traffickers will wrap currency in mylar to prevent detection by x-ray machines.

9. I know from my training and experience that, when contacted by law enforcement, drug traffickers carrying narcotics proceeds will be deceptive about the amount of currency they are carrying. Drug traffickers usually underestimate or are evasive about the quantity of the currency they are carrying because they are aware law enforcement can seize narcotics proceeds. Drug traffickers usually believe that if they are in possession of a lesser amount of currency that it is less likely to be seized by law enforcement. It is common for drug traffickers carrying narcotics proceeds to change their statements regarding the amount of currency that they are carrying several times.

## SUMMARY OF INVESTIGATION

10. In September 2018, I learned from a Source-of-Information (hereinafter "SOI") that Isaiah David Lancaster (hereinafter "Lancaster") travels from Florida to Oregon with drug proceeds to purchase marijuana that is subsequently shipped or otherwise transported back to Florida for distribution. I learned from the SOI that Lancaster intended to travel from Florida to Oregon to purchase marijuana sometime in the next few weeks.

11. Based on conversations with PDX-TF investigators and a review of their respective reports, I learned the following: On October 3, 2018, members of the PDX-TF participated in an interdiction mission at the Portland International Airport (PDX) targeting Delta Airlines flight #2715 inbound from Atlanta, Georgia, which is a common flight for drug and money traffickers traveling to PDX. Multnomah County Sheriff's Office Deputy and K9 Handler Bobby O'Donnell, who was assigned to the PDX-TF, and his narcotics detection K9 were stationed near the area where passengers depart the plane at Gate D7. The K9 alerted to the odor of drugs emanating from luggage carried by passengers departing flight #2715, including the luggage of passengers Noah Ty Engle (hereinafter "Engle") and Lancaster.

12. PDX-TF investigators approached Engle, identified themselves as law enforcement, and told Engle about the K9 alert to his luggage. Engle verbally consented to allow the investigators to search his luggage. PDX-TF investigators spoke with Engle during the search of his luggage, and Engle said he was not currently employed, that the purpose of his travel to Oregon was for vacation, that he did not know where he would be staying during his time in Oregon, that he did not know how long he would be in Oregon, and that he was traveling with approximately $4,000 in spending money. PDX-TF investigators subsequently located approximately $4,000 in Engle's luggage pursuant to the consent search and did not find any drugs or drug paraphernalia. Engle also said he was traveling with his brother, Lancaster. PDX-TF took Engle into custody and read him his Miranda Rights.

13. Based on my training and experience, I know it is common for narcotics detection K9s to alert to bulk currency that has absorbed the scent of drugs as a result of being around drugs and part of drug transactions. Based on this, and the fact that no drugs or paraphernalia were located inside Engle's luggage, I believe the K9 alerted to the scent of drugs on the cash. Based on my training and experience, I believe Engle's lack of travel plans, his traveling with a large amount of cash, and the K9 alert to Engle's luggage indicate that Engle was traveling to Oregon for the purpose of purchasing drugs.

14. While Engle was being interviewed, other PDX-TF investigators approached Lancaster, identified themselves as law enforcement, and told Lancaster about the K9 alert to the odor of drugs emanating from his luggage. At this time, Lancaster attempted to walk away from the PDX-TF investigators. During the contact, Lancaster remained animated, started to sweat, and said PDX-TF investigators could not search his luggage without a search warrant. Lancaster was

informed that his luggage would be detained pending acquisition of a search warrant for the luggage, to which Lancaster responded by verbally consenting to a search of the luggage.

15. Pursuant to Lancaster's consent, PDX-TF investigators searched Lancaster's carry-on backpack. Inside the backpack, investigators located a smaller backpack. Inside that smaller backpack, investigators located a black stocking cap containing $14,860 in U.S. Currency. During the search, Lancaster initially told investigators that he was traveling with $4,000, then subsequently changed his answer to $13,000. Lancaster said he was traveling to Oregon to meet a friend named Kurt Griffiths from Hood River, Oregon. Lancaster also stated that he was coming to Oregon to ride four wheelers with Griffiths in Florence, Oregon. Investigators are familiar with Kurt Griffiths because, several weeks prior to contacting Lancaster at PDX, investigators executed a federal search and seizure warrant at a property associated with Kurt Griffiths and his son, Cole Griffiths, and seized over 4,000 live marijuana plants.

16. When investigators inquired about the purpose of the currency he was carrying, Lancaster said that he was thinking about buying a recreational vehicle while he was in Oregon because he visits Oregon frequently to kiteboard in the Columbia River Gorge. Lancaster was unable to explain where or how he acquired the currency he was traveling with, and stated that he had saved the money for many years. Lancaster also stated that he was a wildlife trapper in Florida, but he would not answer questions about how much money he makes annually or whether he had filed taxes for the previous year. Lancaster then stated that the currency he was traveling with came from his girlfriend's bank account, but he would not provide investigators with his girlfriend's name or information about her bank account.

17. Pursuant to the consent search of Lancaster's luggage, PDX-TF investigators also located a small, black flip phone. PDX-TF investigators noted that Lancaster was also carrying a

smartphone in his hand. Lancaster verbally consented to a search of his phones by PDX-TF investigators. While searching the phones, PDX-TF investigators observed text message conversations detailing the purchase of marijuana. For example, on Lancaster's flip phone, investigators observed a text message from someone asking Lancaster if he had cartridges, which are known to be marijuana THC concentrates and which are commonly sold on the black market similar to bulk flower marijuana.

18. In addition, on Lancaster's smartphone, PDX-TF investigators observed a conversation between Lancaster and contact "Chris Portland" in which Lancaster detailed his dislike of approximately six to seven pounds of marijuana because the marijuana had too many seeds in it. "Chris Portland" asked for proof, such as a photo, and Lancaster sent a video to "Chris Portland" to show how many seeds were in the marijuana that Lancaster had purchased from "Chris Portland." "Chris Portland" directed Lancaster to send the marijuana with the seeds to "Chris Portland's" mother's house in Portland, Oregon, and said that he would get Lancaster some better marijuana. The text messages show that Lancaster travels to Oregon monthly to sample, package, and ship marijuana out of Oregon. Lancaster was subsequently detained and PDX-TF investigators read him his Miranda Rights.

19. Subsequent records checks conducted by members of the PDX-TF indicated that Lancaster has an extensive arrest history, including drug arrests, with his most recent arrest being for manufacturing marijuana and possession with intent to distribute marijuana in 2013. While in custody, and after acknowledging that he understood his Miranda Rights, Lancaster said he wanted to talk to PDX-TF investigators, and subsequently identified "Chris Hampton," presumably "Chris Portland," who lives in Portland and manufactures and sells Butane Hash Oil ("BHO" – a derivative of marijuana) in the Portland metro area. Lancaster said he has seen Hampton's BHO

lab and has purchased BHO from Hampton in the past. Lancaster also said he knew of a large marijuana grow in Corbett, Oregon, but did not know the exact location.

20. Based on my training and experience, there are a number of facts that lead me to believe Lancaster was traveling from Florida to Oregon with drug proceeds for the purpose of purchasing marijuana to subsequently ship or otherwise transport to Florida. These facts include Lancaster's reaction to contact by law enforcement (i.e. animated, nervous, and sweating), his change in story of how much money he was traveling with, his statement that he was going to meet with known marijuana drug traffickers (i.e. Kurt and Cole Griffiths), messages on his phones indicative of marijuana trafficking, a review of his criminal history indicating previous arrests for possession of marijuana with intent to distribute, his knowledge of marijuana traffickers in Oregon, and the K9 alert to Lancaster's luggage followed by PDX-TF's subsequent identification of a large amount of currency concealed in Lancaster's luggage.

21. The $4,000 in Engle's luggage was not seized. The $14,860 found in Lancaster's luggage was seized. Lancaster and Engle were later released from detention. PDX-TF transferred custody of the $14,860 to the DEA for administrative forfeiture and Lancaster filed a claim to it in the administrative process.

## CONCLUSION

22. Based on the foregoing information, I have probable cause to believe, and do believe, that the $14,860 in U.S. currency seized from Isaiah David Lancaster is subject to forfeiture pursuant to 21 U.S.C. §881(a)(6), as moneys furnished or intended to be furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate violations of 21 U.S.C § 801, *et. seq*.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 1st day of March 2019.


<u>s/ Bradley A. Dixon</u>
BRADLEY A. DIXON
Special Agent
Drug Enforcement Administration

≈JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☐ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE                                    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE